UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| PATRICIA ANN HENSON, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 4:20-CV-45-JPK |
| | ) |
| KILOLO KIJAKAZI, Commissioner of | ) |
| Social Security Administration, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Patricia Ann Henson, and Plaintiff's Opening Brief [DE 23]. Plaintiff requests that the September 17, 2018 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for an award of benefits or, in the alternative, for a new hearing. The Commissioner filed a response, and Plaintiff filed a reply. For the following reasons, the Court remands this matter for further administrative proceedings.

**PROCEDURAL BACKGROUND**

On September 1, 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability as of May 27, 2017. The applications were denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on July 11, 2019. On July 31, 2019, the ALJ issued an unfavorable decision, making the following findings:[1]

    1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 2018.

---

[1] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the decision. Internal citations to the Code of Federal Regulations are omitted.

2.  The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of May 27, 2017 through her date last insured of June 30, 2018.

3.  Through the date last insured, the claimant had the following severe impairments: osteoporosis, lumbar degenerative disc disease, post-traumatic stress disorder (PTSD), major depressive disorder and attention deficit hyperactive disorder (ADHD).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the [ALJ found] that, through the date last insured, the claimant had the residual functional capacity to lift and/or carry and push and/or pull less than 10 pounds frequently and 10 pounds occasionally. She can stand and/or walk about 2 hours in an 8 hour work day. She can sit for about 6 hours in an 8 hour work day. She can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to hazards such as moving machinery, unprotected heights and dangerous terrain. She can understand, remember, and carry out simple, routine, repetitive tasks.

6.  Through the date last insured, the claimant was capable of performing past relevant work as an addresser. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from May 27, 2017, the amended alleged onset date, through June 30, 2018, the date last insured.

(AR 12-19[2]).

The Appeals Council declined to assume jurisdiction, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which is found on the lower right corner of the page, and not the page number assigned by the Court's CM/ECF system.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform his past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed because the ALJ failed to adequately account for Plaintiff's limitations in concentration, persistence, and pace, and Plaintiff's occasional need for a cane or walker, in the RFC and in questions posed to the vocational expert ("VE").

### A. Concentration, Persistence, and Pace

The ALJ found that Plaintiff had "moderate" limitations in concentration, persistence, and pace, and stated in the RFC that Plaintiff "can understand, remember, and carry out simple, routine, repetitive tasks." There were no other restrictions in the RFC specifically linked to concentration, persistence, or pace. (*See* AR 14). Plaintiff asserts that the ALJ did not adequately account for her limitations in the RFC or in the hypotheticals to the VE. (Pl.'s Br. 20-23, ECF No. 23).

The Seventh Circuit Court of Appeals has frequently considered whether a limitation to unskilled tasks adequately addresses limitations in concentration, persistence, and pace. It has made clear that not all issues of "concentration" or "pace" can be resolved by making tasks simpler. *See, e.g., Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (noting that "unskilled" work is defined as work that can be quickly learned by demonstration: "[W]hether work can be learned in this manner is unrelated to the question of whether an individual with . . . difficulties maintaining concentration, persistence, or pace . . . can perform such work."); *see also* SSR 85-15, 1985 WL 56857 (January 1, 1985), *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job."). But the Seventh Circuit has also held that in certain circumstances, a limitation to unskilled work can account for concentration

5

difficulties if the record indicates that it addresses the underlying symptoms. *See, e.g., Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (holding that a restriction to "work requiring the exercise of only simple judgment . . . specifically account[ed] for . . . concentration difficulties"). Therefore, the Court must assess whether the ALJ in this case adequately explained how a restriction[3] to "simple, routine, repetitive tasks" addresses Plaintiff's specific limitations, with support from substantial evidence in the record.

At the hearing, Plaintiff testified that she had memory issues, such as forgetting things her daughter had said. (AR 41). When driving, she sometimes had to pull over to remember where she was going. (AR 42). She struggled to focus and concentrate, and Adderall "helped some, but hasn't cured" her difficulty with focus. *Id*. She reported that she needed reminders to take medication. (AR 199, 224-225). She cooked only simple meals, such as microwave meals, because of her lack of focus. (AR 220-21). At step two, the ALJ summarized this evidence and considered Plaintiff's own reports that she was able to drive, prepare meals, watch TV, read, play bingo, do crossword puzzles, manage funds, and use the internet. (AR 13 (citing 198-206, 218-225)). He therefore found that she had "moderate" limitations in concentration, persistence, and pace. *Id*. At step three, the ALJ summarized the medical evidence regarding Plaintiff's treatment for ADHD. He cited generally to medical notes indicating that she has issues with short-term memory, while pointing out that her reported memory issues often did not appear on examination. (AR 16 (citing AR 428-459)). Addressing Plaintiff's mental limitations overall, he concluded: "The course of treatment of

---

[3] Strictly speaking, the ALJ's statement that Plaintiff "can understand, remember, and carry out simple, routine, repetitive tasks" is not the same as limiting Plaintiff to *only* those kinds of tasks. The Court interprets the ALJ to mean that Plaintiff's job should not require her to perform more complex tasks, which is how the parties have interpreted the ALJ's finding in their briefing.

6

medication in conjunction with talk therapy allowed the claimant's mental health to be stable. Based upon the foregoing, the records support the mental limitations in the residual functional capacity." (AR 17).

Upon review of the record, and of the ALJ's explanation of his findings, it is not clear how the ALJ arrived at his conclusion that a limitation to routine tasks would address Plaintiff's concentration and memory issues. It appears that the ALJ considered driving, cooking, watching TV, reading, bingo, crossword puzzles, managing money, and using the internet as simple tasks and therefore inferred that Plaintiff could perform tasks of similar complexity in a work setting. But those are all short-term tasks that can mostly be done (or abandoned) on one's own time. Although Plaintiff testified that she could do those things, that does not show that she could do them in a sustained manner, as she would have to do in a workplace. The Seventh Circuit has often warned against equating the performance of *ad hoc* daily activities with the ability to perform full time, competitive work. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."). So, the evidence that Plaintiff can do some simple tasks at home does not end the Court's inquiry.

The record contained examples of Plaintiff's difficulties sustaining even the "simple" tasks: Although Plaintiff could drive, she testified that she had to pull over to remember where she was going. (AR 42). Although she cooked, she reported cooking only meals such as cereal and microwave meals, because of her lack of focus. (AR 220-21). These allegations suggest that she might struggle to do those tasks on a sustained basis. They are evidence that merely limiting her

to "simple, routine, repetitive tasks" may not be enough to account for her "moderate" memory and concentration issues, and the ALJ needed to account for that evidence in crafting the RFC.

Although the ALJ recited Plaintiff's allegations about her limited driving and cooking, he did not appear to consider the distinction described above, explain why he thought the RFC accounted for her concentration issues, or cite to any evidence that directly demonstrated her ability to sustain simple tasks over time. Nor was his finding supported by the state agency psychological consultants: both opined that Plaintiff's mental limitations were mild and non-severe, and the ALJ explicitly found their opinions unpersuasive, because they did not account for Plaintiff's subsequent "reports about her memory and focus issues." (AR 17). Ultimately, there was no medical opinion that directly addressed this issue and supported the ALJ's logical leap. That distinguishes this case from recent cases cited by the Commissioner in which the Seventh Circuit found that limitations to simple tasks contributed to addressing concentration difficulties. *See, e.g., Burmester v. Berryhill*, 920 F.3d 507, 512-13 (7th Cir. 2019) (ALJ reasonably relied on medical expert who translated concentration limitations into RFC determination that claimant could "understand, remember and carry out simple instructions").[4] As the Seventh Circuit recently explained, an ALJ's reliance on such medical opinions when formulating a hypothetical and mental RFC is permissible. *See Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (hypothetical properly included the restrictions that agency reviewers "stated would accommodate Pavlicek's limitations" in concentration, persistence, and pace) (citing *Burmester*). But the ALJ here cited no such opinions. To the contrary, the ALJ found the psychological opinions of the agency reviewers

---

[4] *See also Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (upholding limitation to simple, routine tasks where ALJ relied on medical expert testimony, and two state agency doctors, in crafting the RFC); *Pytlewski*, 791 F. App'x at 615-16 (state agency doctors' detailed "checklist" of conclusions about the claimant's mental limitations supported the RFC restrictions); *Saunders v. Saul*, 777 F. App'x 821, 825 (7th Cir. 2019) (ALJ properly relied on medical expert's opinion that claimant needed no other limitations beyond those posed to the VE); *Dudley*, 773 F. App'x at 842 (ALJ's limitations exceeded those suggested by two examining doctors, who explicitly considered the claimant's concentration difficulties).

"unpersuasive" and "not consistent with the record as a whole" because they found "no more than mild limitations in any of the Paragraph B criteria," whereas the ALJ found moderate limitations in memory and focus issues and concentration, persistence, and pace. (AR 13, 17). Yet it remains unclear how the ALJ accounted for those limitations in the RFC.

Nor did the ALJ otherwise account for Plaintiff's moderate limitations in concentration, persistence, or pace "by excluding from the hypotheticals posed to the VE–and the corresponding RFC–tasks that [Plaintiff] would be unable to perform due to specific deficits," as in many of the cases cited by the Commissioner. *See Kuykendoll v. Saul*, 801 Fed. App'x. 433 (7th Cir. 2020) ("because of his stress, anger, or irritability, [claimant] also was limited to 'simple work-related decisions in dealing with changes in the work setting,'" where "ALJ found these specific deficits in concentration, persistence, or pace and then connected them to the assigned limitations").[5] While the hypothetical and RFC "need not use any specific terminology" regarding limitations in concentration, persistence or pace, the ALJ must nevertheless "orient the vocational expert to the totality of a claimant's limitations" or otherwise "exclude from the vocational expert's consideration those positions that present significant problems of concentration, persistence, and pace." *Urbanek*, 796 Fed. App'x at 914 (brackets omitted, quoting *Moreno v. Berryhill*, 882 F.3d

---

[5] *See also Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019) (limitations to "routine tasks and limited interactions with others" adequately accounted for claimant's concentration and memory limitations related to "demonstrated psychological symptoms"); *Pytlewski*, 791 F. App'x at 616 (limitations of "No fast-paced work; Only simple, work-related decisions; Occasional workplace changes; and Occasional interaction with the public, coworkers or supervisors" adequately addressed "stress- or panic-related" concentration limitations); *Saunders*, 777 F. App'x at 825 (RFC appropriately excluded "those tasks that someone with the claimant's limitations would be unable to perform" by including medical expert's proposed concentration-related limitations of "unskilled work involving simple, routine, and repetitive tasks; no fast-paced production line or tandem tasks; only occasional changes in his work setting; and GED levels of one or two"); *Dudley*, 773 F. App'x at 841 (ALJ adequately addressed claimaint's "stress- and panic-related" concentration limitations "by limiting her to 'simple, routine and repetitive tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment'; by excluding work above an average pace, at a variable pace, or in crowded, hectic environments; and by limiting her interactions with the public, supervisors, and coworkers").

9

722, 730 (7th Cir. 2018; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). The ALJ here did neither.

The Court thus remains mindful of the Seventh Circuit's admonition that "concentration, persistence and pace" are not "magic words" whose absence from an RFC or a question to the VE compels remand. *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)). Nonetheless, in this case, the Court finds that the ALJ either failed to account for Plaintiff's concentration and memory issues in the RFC or failed to adequately explain how his conclusion on the issue was supported by substantial evidence in the record. The Commissioner's additional argument that Plaintiff failed to identify "specific, additional limitations that should have been included in the mental RFC," and "medical evidence that would warrant additional limitations," does not alter this conclusion. (*See* ECF No. 24, at 5). As Plaintiff argues, she "specifically mentioned in her brief that she had limitations in remembering, staying focused, and concentrating due to her ADHD and offered specific testimony and medical evidence to support these limitations," including evidence indicating that treatment of her ADHD was complicated by her treatment of chronic pain because she could not take Adderall when she took narcotic pain medication, and an alternative ADHD medication was less effective. (*See* ECF No. 25, at 2 (citing AR 428-29, 431, 435, 438, 441, 447, 449, 450); (ECF No. 23, at 20-22). Plaintiff also cited her hearing testimony explaining that she struggled to concentrate for more than two hours at a time. (ECF No. 23, at 20 (citing AR 42-43); ECF No. 25, at 2 (same)).

The ALJ likewise relied on Plaintiff's hearing testimony and reports regarding her memory and focus issues when finding those limitations to be more severe than opined by the agency consultants. (AR 17). Yet, as in *Lothridge*, "[t]he ALJ's formulation here says nothing about whether [Plaintiff] is capable of performing work at a sustained pace over an entire workday."

10

*Lothridge*, 984 F.3d at 1233. While it is not this Court's role "to displace an ALJ's judgment by making our own findings about the facts," at the same time, "we cannot uphold an administrative determination that failed to explain the outcome adequately." *Id.* The Court therefore remands this case for reconsideration of Plaintiff's mental RFC and a clearer explanation of whether and why any additional RFC restrictions related to Plaintiff's moderate limitations in concentration, persistence, or pace are (or are not) required.

### B. Remaining Issues

Plaintiff also alleges that the ALJ wrongly failed to include Plaintiff's need for a cane or walker in the RFC and in the hypothetical questions posed to the VE, based on an improper analysis of the prescriptions for the device issued by Plaintiff's doctor. The Commissioner argues that the ALJ considered the prescriptions as required by SSR 96-9p. If the case was not remanded on other grounds, this issue would be dispositive: the ALJ relied on a finding that Plaintiff could perform past work (AR 18), and the VE testified that reliance on a cane or walker would preclude past work (AR 61-62). Therefore, the Court addresses this issue for the benefit of the parties in any future proceedings.

SSR 96-9p describes how an ALJ can find that a cane or walker is "medically required": there must be "medical documentation" that adequately describes the purpose of the device and when it is needed.[6] If the documentation is inadequate, the ALJ must still consider, based on the evidence in the record, whether the claimant needs a cane or walker. *See Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (explaining that an ALJ must still "address the evidence" regarding

---

[6] "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185 (July 2, 1996), *7.

11

a claimant's cane use even if there is inadequate "medical documentation" as defined in SSR 96-9p); *Eakin v. Astrue*, 432 F. App'x 607, 613 (7th Cir. 2011) ("The fact that an individual uses a cane not prescribed by a doctor is not probative of her need for the cane in the first place."); *Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009) (absence of a prescription was not sufficient to discount a claimant's use of a walker); *c.f. Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (holding that a medical opinion is required to establish that an assistive device is medically necessary).[7]

Here, the ALJ found that the doctor's prescriptions were "presented without context, reference to treatment notes and durational information," and the accompanying diagnosis of ataxia was not reflected in the doctor's contemporaneous records (AR 17). While the prescriptions themselves may not have been sufficient to establish medical necessity, the ALJ still had to examine the other evidence in the record. Plaintiff presented evidence that she did need an assistive device, including medical records showing uneven or antalgic[8] gait, a history of falling, and poor balance. *See, e.g.,* AR 293 (antalgic gait), AR 397 ("very unsteady" due to balance issues). The ALJ addressed some, but not all, of this evidence, which essentially showed that Plaintiff sometimes presented with an antalgic gait and sometimes did not. (AR 15-16). The ALJ ultimately concluded that this record "supports the postural and environmental limitations in the [RFC]." (AR 16).

---

[7] Courts interpreting this guidance have indicated that, where there *is* a medical opinion that is simply not adequately explained, the ALJ must evaluate the other medical evidence and follow up with the doctor, if necessary. *See, e.g., Collett-Brown v. Saul*, No. 1:19-CV-170-DRL-SLC, 2020 WL 1685717, at *8 (N.D. Ind. Apr. 6, 2020); *Gorman v. Berryhill*, No. 2:17-CV-264-JVB-JEM, 2018 WL 4214528, at *2 (N.D. Ind. Sept. 5, 2018); *Gass v. Berryhill*, No. 1:16-CV-292-RLM-SLC, 2017 WL 3705060, at *4-5 (N.D. Ind. Aug. 28, 2017).

[8] An antalgic gait is "an abnormal pattern of walking secondary to pain that ultimately causes a limp." *See Auerbach N., Tadi P., Antalgic Gait in Adults*, https://www.ncbi.nlm.nih.gov/books/NBK559243/ (last accessed September 15, 2021).

The Court does not resolve whether the ALJ's recitation of the evidence built an adequate logical bridge to the apparent conclusion that she did not need a cane or walker. However, among the evidence the ALJ did not address was Plaintiff's testimony that she uses a rolling walker "90% of the time." (AR 47). If similar testimony is offered on remand, the ALJ must consider that evidence in the manner prescribed by SSR 16-3p, explaining whether the allegation is consistent or inconsistent with the evidence. If the need for a cane is supported by a doctor's prescription, or a medical opinion, but the explanation required by SSR 96-9p is absent or unclear, the ALJ should follow up with the doctor. *See Collett-Brown v. Saul*, No. 1:19-CV-170-DRL-SLC, 2020 WL 1685717, at *8 (N.D. Ind. Apr. 6, 2020); *see also* 20 C.F.R. § 404.1527(c)(3) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.").

Plaintiff requests that the Court reverse and remand for an award of benefits. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). But "[a]n award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415. Since it is not clear on the current record that Plaintiff is disabled, remand for further proceedings, rather than an award of benefits, is appropriate here.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief sought in Plaintiff's Opening Brief [DE 23], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and

Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 28th day of September, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT
